IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:08-CR-175-FL
NO. 5:11-CV-418-FL

| | |
|---|---|
| DESMOND LAMONT GARRETT, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

This cause comes before the Court upon the Government's Motion to Dismiss (DE-52) *pro se* Petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody ("Motion to Vacate"). (DE-47). Petitioner has responded (DE-55) to the Government's Motion to Dismiss, and the matter is now ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1) this matter is before the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is HEREBY RECOMMENDED that the Government's Motion to Dismiss (DE-52) be GRANTED and that Petitioner's Motion to Vacate (DE-47) be DENIED.

**I. Background**

Petitioner was charged in a superseding indictment on June 11, 2008 with armed bank robbery in violation of 18 U.S.C. § 2113. (DE-1). On October 7, 2008, Petitioner pled guilty to that indictment. (DE's 18-20). This guilty plea was memorialized in a Plea Agreement filed and approved by this Court. (DE-20). Specifically, the Plea Agreement stated:

    . . . The Defendant agrees: . . .

> To plead guilty to the Indictment herein . . .
>
> . . . To waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing, and further to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea. The foregoing appeal waiver does not constitute or trigger a waiver by the United States of any of its rights to appeal provided by law.
>
> (DE-20, pg. 1-2).

Likewise, during Petitioner's hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the following testimony occurred:

> THE COURT: Are you currently or have you recently been under the care of a physician, psychologist, psychiatrist or other healthcare provider?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Tell me about that, sir?
>
> THE DEFENDANT: I've been currently taking medication for antidepression, which I have taken for the last like 15, 16 years.
>
> THE COURT: Oh, I see. All right. Are you on it today?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. Is there anything about that medication that interferes with your ability to think and understand?
>
> THE DEFENDANT: No, it just makes me sleepy.
>
> THE COURT: I see. Is it making your sleepy now?
>
> THE DEFENDANT: No, not really.

2

THE COURT: So, you're able to understand everything that's going on?

THE DEFENDANT: Yes.

THE COURT: Okay. Are you seeing a healthcare provider for anything else?

THE DEFENDANT: No, sir.

THE COURT: Have you taken any other drugs or medicine other than the ones you've mentioned? Any pills, medicine or drugs within the last 24 hours?

THE DEFENDANT: No, sir.

THE COURT: Have you drunk any alcoholic beverages in the past 24 horse?

THE DEFENDANT: No, sir.

THE COURT: Have you ever been hospitalized or treated for any type of addiction?

THE DEFENDANT: No, sir.

THE COURT: And do you understand, sir, that the purpose of this proceeding today is to take your plea in response to the charges against you?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Walen, have you had any difficulty communicating with Mr. Garrett?

MR. WALEN: Your Honor, I would just say that in the past he's been treated for, I guess, low intellect. He drew a disability for that at one time, I believe, according to his mother, and he had been treated by DOC for – sometimes I have to explain stuff a lot to him. But I don't think, overall, he has any trouble understanding.

THE COURT: Okay. I appreciate you mentioning that. I assume that treatment didn't involve any medication, just counseling and that sort of thing?

MR. WALEN: I've never been able to get the records. I just know that he had been treated by various doctors for it a number of years ago, and when

3

he was in the Department of Corrections he was evaluated for it. I didn't think it rose to the point of incompetency, so we didn't proceed with that issue.

THE COURT: Okay. And you're not receiving any treatment for that type of problem?

THE DEFENDANT: Not at this time . . .

THE COURT: Okay. So you understand the charges against you?

THE DEFENDANT: Yes . . .

THE COURT: Mr. Garrett, have you discussed not just these charges, but all aspects of your case with your lawyer, Mr. Walen?

THE DEFENDANT: Yes.

THE COURT: And have you had sufficient time for those discussions?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with the services that he's provided to you?

THE DEFENDANT: At this time, your Honor, I did have a little concern about certain issues, but we came to the discussion that everything is, you know, on the right path.

THE COURT: Okay. So, you're satisfied with his services as of today?

THE DEFENDANT: Yes.

THE COURT: And the problems you did have have been resolved?

THE DEFENDANT: Yes, sir . . .

THE COURT: Okay. Let me ask you this specifically: Do you understand that your sentencing range and the sentence that is actually imposed may be different from any estimate that your lawyer or any other person may have given you, because all that they can provide at this point is an estimate, not a guarantee of the final result?

THE DEFENDANT: I understand.

THE COURT: Do you also understand that after your advisory guideline

range has been established, the Court has authority to depart or vary from the guidelines and impose a sentence that is either more severe or less severe than that called for by the guidelines?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions, sir, about the sentencing process?

THE DEFENDANT: No, sir . . .

THE COURT: Now, Mr. Garrett, let me ask you the same thing. Did you have an opportunity to read and discuss the plea agreement with your lawyer before you signed it?

THE DEFENDANT: Yes.

THE COURT: And you understand all the terms of the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Sir, do you understand the meaning of the words and phrases which were used in the plea agreement, having discussed it with your lawyer and having heard today my explanation of the standards for acceptance of this type of plea agreement?

THE DEFENDANT: Yes . . .

THE COURT: And do you understand, as well, sir, that you have agreed to waive certain valuable appellate right in this agreement?

THE DEFENDANT: Yes.

THE COURT: And do you understand that waivers of that type generally are upheld?

THE DEFENDANT: Yes.

THE COURT: And did you, sir, discuss the waiver provisions in this agreement specifically with your lawyer?

THE DEFENDANT: Yes.

THE COURT: Mr. Garrett, has anyone made any promise or assurance to you of any kind, other than those set forth in the plea agreement, in an effort

5

> to induce you to plead guilty in this case?
>
> THE DEFENDANT: No . . .
>
> THE COURT: And are you pleading of your own free will, sir, because you are, in fact, guilty?
>
> THE DEFENDANT: Yes . . .
>
> THE COURT: Mr. Garrett, sir, have you answered all of my questions truthfully?
>
> THE DEFENDANT: Yes, I have.

(DE-39, pg. 15-17, 19-20, 22, 26-27, 33).

During his Rule 11 hearing, Petitioner was represented by Mr. James Michael Walen. (DE-14). A Presentence Investigation Report ("PSR") was filed by the United States Probation Office on December 31, 2008. (DE-23). Mr. Walen noted two objections to the PSR. *Id.* at pg. 13.

Petitioner later filed two motions to appoint new counsel. (DE's 21 & 22). In these motions, Petitioner alleged that Mr. Walen "failed to lodge certain unspecified objections to the . . . [PSR]." (DE-26, pg. 1). In addressing these motions, the Court specifically noted that Mr. Walen had "skillfully and ably represented defendant . . ." *Id.* Nonetheless, Petitioner's request was granted, and Mr. Robert J. McAfee entered a notice of appearance for Petitioner on January 16, 2009. (DE-27).

The Government filed a motion for upward departure pursuant to U.S.S.G. § 4A1.3 on January 6, 2009. (DE-24). Petitioner's sentencing hearing included the following testimony:

> THE COURT: . . . DID YOU HAVE ANY OBJECTIONS? YES, YOU DID.
>
> MR. MC AFEE: YES, YOUR HONOR. THERE ARE TWO.
>
> THE COURT: YOU OBJECTED TO THE ADJUSTMENT FOR

6

PHYSICAL RESTRAINTS, AND CONTEND THAT INCREASE IS NOT WARRANTED. AND YOU ALSO OBJECT TO THAT ENHANCEMENT FOR THE USE OF A MINOR.

WELL, LET'S JUST TAKE THEM ONE BY ONE. WILL YOU TELL ME WHAT YOU WANT ME TO KNOW IN CONSIDERING THE FIRST OBJECTION TO PARAGRAPH 41.

MR. MC AFEE: YES, YOUR HONOR. BY THE WAY, BOTH OBJECTIONS WERE FILED BY PRIOR COUNSEL, BUT I HAVE KNOWN THE ARGUMENT AND I THINK THEY HAVE A BASIS TO PRESENT TO THE COURT. THE FIRST OBJECTION, JUDGE, DEALS WITH PARAGRAPH 41 OF THE PRESENTENCE REPORT, THE TWO LEVEL ADJUSTMENT FOR PHYSICAL RESTRAINTS OF THE VICTIM. AND THE PROBATION OFFICER'S RESPONSE CITES SOME FOURTH CIRCUIT CASES DEALING WITH ESSENTIALLY A GUN TO THE HEAD SCENARIO. I THINK IT WAS THE <u>WILSON</u> CASE THAT GIVES A SPECIFIC FACT OF HOLDING A GUN TO SOMEONE'S HEAD DURING THE COURSE OF A CARJACKING TO KEEP THEM IN THE CAR AND RESTRAINING THEM.

IN THIS CASE, YOUR HONOR, MR. GARRETT'S CONDUCT WITHIN THE BANK DEALING WITH THE GUN -- WE'RE GOING TO CALL IT THE GUN BECAUSE IT PROBABLY APPEARED THAT WAY TO EVERYONE INVOLVED -- WAS THAT HE BRANDISHED THE GUN, AND BY BRANDISHING THE GUN, ORDERED THE TELLERS TO STEP AWAY FROM THE TELLER LINE. AND THE PROBATION OFFICER'S RESPONSE SAYS BY VIRTUE OF HIM BRANDISHING THE GUN, THE VICTIMS' FREEDOMS AND MOVEMENTS WERE RESTRICTED.

HE ALSO, AFTER HE GOT THE BAG OF MONEY, HE --ACCORDING TO THE WITNESS STATEMENTS AND THE NARRATIVE THAT I HAVE REVIEWED -- SAID EVERYONE GET ON THE FLOOR AND DON'T LOOK. AND THAT -- IT DOESN'T INDICATE IN THERE WHETHER THE GUN WAS ACTUALLY POINTED AT ANYONE DURING THAT TIME FRAME. AND MR. PERRY MAY CORRECT ME IF I AM MISSTATING THAT.

SO THERE IS CERTAINLY COMMANDS THAT HE IS GIVING, BUT THERE ARE TWO REASONS THE COURT SHOULD NOT APPLY AN EXTRA ENHANCEMENT. FIRST OF ALL, THE BRANDISHING OF THE GUN HAS ALREADY BEEN ADDRESSED IN PARAGRAPH 40 OF THE PRESENTENCE REPORT WHERE HE GOT A FOUR-LEVEL BUMP FOR OTHERWISE USING A WEAPON, A DANGEROUS

7

WEAPON, AND THAT IS THROUGH THE BRANDISHING OF THE FIREARM THROUGHOUT THIS ROBBERY OF THE BANK.

THE SECOND REASON, YOUR HONOR, IS THAT BY ORDERING, BY STATING OR ORDERING PEOPLE TO GET ON THE GROUND, THAT IS NOT THE ONLY THING HE SAID, OBVIOUSLY. HE SAID -- THERE WERE A NUMBER OF THINGS THAT HE GAVE COMMANDS AT, SWORE AT PEOPLE AND THAT SORT OF THING, BUT ALL OF THAT IS THE FORCE AND INTIMIDATION AND VIOLENCE THAT IS AN ELEMENT OF THE OFFENSE ALREADY, AND THAT IS WHAT RESULTS IN THE BASE OFFENSE LEVEL AND NOT NECESSARILY AN ENHANCEMENT.

SO WE WOULD CONTEND TO THE COURT THAT EVEN THOUGH HE IS BRANDISHING WHAT APPEARS TO BE A GUN AND HE IS SAYING STEP AWAY OR GET ON THE GROUND, IT'S NOT NECESSARILY BECAUSE OF THE USE OF THAT WEAPON THAT HE IS RESTRAINING THOSE PEOPLE. WE WOULD CONTEND THAT THE USE OF THE WEAPON IS PART OF THE OFFENSE AND PART OF THE CONDUCT ITSELF AND SHOULDN'T BE COUNTED TWICE.

THE COURT: ALL RIGHT. LET'S GO AHEAD AND HEAR YOU ON YOUR OTHER ONE.

MR. MC AFEE: JUDGE, ON THE SECOND ARGUMENT, IT HAS TO DO WITH THE USE OF A MINOR AND THAT IS -- APPEARS IN PARAGRAPH 44 OF THE PRESENTENCE REPORT. THAT IS, AGAIN, A TWO-LEVEL INCREASE FOR USE OF A MINOR UNDER I THINK IT'S 4A1.2B. I MAY HAVE MISSTATED THAT, BUT IT APPEARS IN THE PRESENTENCE REPORT.

THE PROBATION OFFICER IS CORRECT. THERE IS NO PUBLISHED FOURTH CIRCUIT CASE ABOUT WHAT IS MEANT BY USE OF A MINOR. THERE IS A RAFT OF CASES THAT FROM [SIC] UNPUBLISHED IN THE NUMBER OF CIRCUITS, BUT WHAT I WANT TO DRAW THE COURT'S ATTENTION TO IS THERE APPEARS TO BE A CIRCUIT SPLIT AT LEAST BASED ON WHAT I HAVE READ.

THE FOURTH CIRCUIT IN A COUPLE OF UNPUBLISHED CASES, ONE IS <u>UNITED STATES VERSUS CUMMINGS</u> AND THE OTHER IS <u>UNITED STATES VERSUS FEASTER</u>, I CAN GIVE YOU THE FEDERAL APPENDIX CITES FOR TODAY'S PURPOSES. THE <u>CUMMINGS</u> CASE IS 18 FEDERAL APPENDIX 135. IT'S A 2001

8

CASE. THE <u>FEASTER</u> CASE IS 43 FEDERAL APPENDIX 628, WHICH IS A 2002 CASE.

THE FOURTH CIRCUIT ACTUALLY FOLLOWS THE EXAMPLE SET BY THE SEVENTH CIRCUIT IN A CASE CALLED <u>RAMSEY</u>. <u>RAMSEY</u> IS A 2002 CASE OUT OF THE FEDERAL CIRCUIT WHICH DEALT WITH A BANK FRAUD CASE. THE <u>RAMSEY</u> CASE, THE FOURTH CIRCUIT ADOPTS A MORE EXPANSIVE VIEW OF USE OF A MINOR.

<u>FEASTER</u>, SPECIFICALLY IN ADDRESSING WHAT THE FOURTH CIRCUIT IS INTENDING THERE, AND I REALIZE THIS IS UNPUBLISHED, BUT IT MAY BE USEFUL. THE FOURTH CIRCUIT SAYS THE PLAIN LANGUAGE OF 3B1.4 CLEARLY INDICATES THAT AN AFFIRMATIVE ACT TO INVOLVE A MINOR IN THE OFFENSE CHARGED IS REQUIRED AND CITES TO <u>RAMSEY</u>.

IN LIGHT OF THE COMMENTARY TO SECTION 3B1.4, THE COURT READS THE TERM "USE" BROADLY TO INCLUDE ANY AFFIRMATIVE ACT BY THE DEFENDANT TO DIRECT COMMAND, ENCOURAGE, INTIMIDATE, COUNSEL, TRAIN, PROCURE, RECRUIT, SOLICIT OR OTHERWISE ENGAGE A MINOR WITH RESPECT TO THE CHARGED OFFENSE.

NOW, THAT OBVIOUSLY GIVES US A GREAT DEAL OF POSSIBILITY TO CONSIDER. OFFSETTING THAT, JUDGE, ON THE OTHER SIDE OF THE COIN, THERE IS A SIXTH CIRCUIT CASE, <u>U.S. VERSUS BUTLER</u>, 207 F. 3D 839, AND THE NINTH CIRCUIT CASE, <u>UNITED STATES VERSUS PARKER</u>, 241 F.3D 1114, A 2000 AND 2001 CASE RESPECTIVELY, AND BOTH OF THOSE ARE BANK ROBBERY CASES.

THE FOURTH CIRCUIT IN THE <u>CUMMINGS</u> CASE ACTUALLY REFERENCES THOSE TWO CASES SAYING THAT IS THE OTHER SIDE OF THE COIN WE ARE TALKING ABOUT. IN THOSE CASES IN THE SIXTH CIRCUIT AND NINTH CIRCUIT, THE COURT SAYS A CRIMINAL PARTNERSHIP BETWEEN A MINOR AND A DEFENDANT IS NOT ENOUGH. THERE HAS TO BE SOMETHING THE DEFENDANT DOES TO INVOLVE THE MINOR, TO USE THE MINOR. AND IT REFERS TO THE SECTION 3B1.4 THAT SAYS TO ENCOURAGE, TO COUNSEL, TO DIRECT, TO COMMAND, THOSE SORTS OF THINGS . . .

. . . WE WOULD CONTEND THAT MR. GARRETT DIDN'T USE THE MINOR IN THE OFFENSE. EVEN AS BROADLY AS THE FOURTH

9

CIRCUIT WOULD HAVE US INTERPRET THAT, HE IS NOT ENCOURAGING, HE IS NOT COUNSELING, HE IS NOT DIRECTING, HE IS NOT DIRECTLY INVOLVING THE MINOR . . .

IN THIS CASE, JUDGE, WE DON'T HAVE THAT LEVEL OF CONTROL. WE DON'T HAVE THAT LEVEL OF DIRECTION OR CONDUCT. AND WE WOULD CONTEND TO YOU THAT THE ENHANCEMENT BASED ON USE OF A MINOR SHOULD NOT APPLY. THANK YOU . . .

MR. MC AFEE: . . . THE BASIS UPON WHICH THE COURT MAY DEPART -- AND YOUR HONOR NOTED IT IN 4A1.3A2, THE TYPES OF INFORMATION USED, DISCIPLINARY INFRACTIONS IN ANY READING DOESN'T SEEM TO MEET ANY OF THE FIVE CATEGORIES TALKING ABOUT PRIOR SENTENCES NOT USED IN COMPUTING THE CRIMINAL HISTORY, PRIOR SENTENCES SUBSTANTIALLY MORE THAN ONE YEAR, PRIOR SIMILAR MISCONDUCT, OR FAILURE TO COMPLY WITH ADMINISTRATIVE ORDER WHETHER THE DEFENDANT WAS PENDING TRIAL OR SENTENCING ON ANOTHER CHARGE OR PRIOR SIMILAR ADULT CRIMINAL CONDUCT NOT RESULTING IN CRIMINAL CONVICTIONS. IT'S SIMPLY NOT A BASIS THAT THE GUIDELINES CONTEMPLATE AS A REASON TO GO UPWARD . . .

JUDGE, I MEAN, THE UPSHOT OF MR. GILMORE'S MOTION IS MY CLIENT IS A BAD GUY AND HE DOESN'T CALL HIM A SOCIOPATH, BUT THAT IS ESSENTIALLY READING BETWEEN LINES.

I THINK THIS NEEDS TO BE IN CONJUNCTION WITH PARAGRAPH 25 AND 26 DEALING WITH MY CLIENT'S MENTAL AND EMOTIONAL HEALTH AS WELL AS SOME OTHER REFERENCES AS TO HOW HE DID WHILE HE WAS IN CUSTODY.

HE WAS ON SUICIDE WATCH AT LEAST THREE DIFFERENT TIMES DURING HIS FIRST SENTENCE. HE WAS DIAGNOSED AS A JUVENILE WITH BIPOLAR DISORDER, AND DEPRESSION AND PRELIMINARY DIAGNOSIS WHICH I HAVEN'T BEEN ABLE TO CONFIRM WITH DR. COLEMAN OF SCHIZOPHRENIA. THAT DOES SHOW UP. THERE IS A MENTION IN HERE.

THE ONLY TREATMENT AS FAR AS THE MEDICATION THAT HE WAS EVER GIVEN FOR DEPRESSION AND ANXIETY, SCHIZOPHRENIA, AND BIPOLAR DISORDER IN THE BUREAU OF

10

PRISONS WAS PROZAC. AND HE WAS ON, AS I SAID, HE WAS ON SUICIDE WATCH THREE TIMES. THERE WAS ACTUALLY A THREAT, EVEN AN ATTEMPT WHILE HE WAS IN CUSTODY, AND WHEN HE GOT OUT, JUDGE, I CAN TELL YOU THIS FROM MR. GARRETT'S PERSPECTIVE AND WHAT HE HAS TOLD ME, HE CAN TELL WHEN HIS BEHAVIOR IS CHANGING. I DON'T KNOW IF IT'S PART OF BEING BIPOLAR. YOU CAN TELL YOU ARE CYCLING, THAT YOU KNOW THAT A DOWN IS COMING OR AN UP WAS COMING, AND HE ACTUALLY DISCUSSED IT WITH THE PROBATION OFFICER . . .

. . .THE PROBATION OFFICER CONFIRMED HE HAD STILL BEEN PRESCRIBED PROZAC AND ZOLOFT, ALSO . . .

THE GUIDELINES HAVE TAKEN INTO ACCOUNT ALREADY HIS PRIOR CRIMINAL HISTORY. THEY TAKE INTO ACCOUNT THE BASIS FOR APPROPRIATE UPWARD DEPARTURE OF THE -- THERE IS NO DOUBT MY CLIENT HAS EXTENSIVE CRIMINAL HISTORY FOR SOMEONE SO YOUNG. BUT THE FACT IS THE GUIDELINES ARE PRESUMED TO BE THE REASONABLE RANGE THAT THE COURT WOULD CONSIDER.

WE WOULD CONTEND AN UPWARD DEPARTURE UNDER THESE CIRCUMSTANCES WOULD NOT BE APPROPRIATE. WE WOULD SUGGEST THE COURT SHOULD STAY WITHIN THE RANGE, AND I WOULD ASK THE COURT TO SENTENCE AT THE BOTTOM OF THE RANGE. BUT WE WOULD ASK THE COURT TO CONSIDER THAT THE GUIDELINES THEMSELVES HAVE ALREADY INCORPORATED THE BASES THAT MR. GILMORE ASSERTED . . .

MR. MC AFEE: JUDGE, SINCE THE COURT IS OBVIOUSLY CONSIDERING AN UPWARD DEPARTURE, IF THE COURT GOES TO LEVEL 48 OR CATEGORY IV STATUS, I WOULD ASK YOU TO SENTENCE HIM AT THE BOTTOM OF THE RANGE, 110 MONTHS. I WOULD ASK FOR MENTAL HEALTH ASSESSMENT AND SUBSTANCE ABUSE AS NEEDED -- IT CERTAINLY WOULD NOT HARM – AND THAT THE COURT WOULD CONSIDER RECOMMENDING BUTNER SINCE I THINK IT HAS A PSYCHIATRIC FACILITY THAT WOULD BE MOST PROBABLE.

(DE-37, pg. 6-13, 31, 33-36, 43-44)

After granting the Government's motion for upward departure, the Court sentenced Petitioner to,

11

*inter alia*, a total of 150 months imprisonment. (DE's 31, 33).

A notice of appeal was filed on Petitioner's behalf on March 17, 2009. (DE-30). On June 4, 2010, the Fourth Circuit affirmed Petitioner's sentence. (DE-40). In doing so, the Fourth Circuit stated:

> [Petitioner] states that he does not dispute the extent of the departure, but contends that the district court's basis for a departure was unjustified--a procedural error. He asserts incorrectly that the court's only basis for departing was the inadequacy of his criminal history. In fact, the court relied on the need to protect the public because of the likelihood that Garrett would commit future crimes . . .
>
> Garrett also contends that the district court failed to correctly calculate his guideline range. However, Garrett is foreclosed from raising this issue because, under the terms of his plea agreement, he waived his right to appeal "any issues that relate to the establishment of the advisory Guideline range," reserving only the right to appeal a sentence above the guideline range . . . Our review of the record discloses that the waiver was knowing and intelligent, and is thus enforceable.
>
> We conclude that Garrett has not identified any significant procedural error. The court did not select the sentence based on clearly erroneous facts or improper criteria and it considered the § 3553(a) factors, in particular the need to protect the public, but also the nature and circumstances of the offense and the need to provide Garrett with needed medical care. The court considered whether a sentence within criminal history category IV would be adequate and decided that it would not. Taking into account the totality of the circumstances and giving "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance," Gall, 522 U.S. at 51, we are satisfied that the sentence was not substantively unreasonable. Therefore, the district court did not abuse its discretion in sentencing Garrett.
>
> We therefore affirm the sentence imposed by the district court. We dismiss that portion of the appeal in which Garrett challenges the district court's calculation of the guideline range . . .
>
> (DE-40, pg. 4-6).

Contrary to the Government's assertion in its memorandum in support (DE-53, pg. 2), Petitioner

12

did petition for certiorari to the Supreme Court, although that petition was denied on October 4, 2010. Garrett v. United States, 131 S.Ct. 370 (2010). Petitioner filed the instant Motion to Vacate on August 9, 2011 (DE-43), and he filed a corrected Motion to Vacate on August 25, 2011. (DE-47).

## II. Legal Standards and Analysis

### A. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a claim. To survive a Rule 12(b)(6) motion, the facts alleged must "raise a right to relief above the speculative level," and must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). A claim may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Id.* at 1950. Without such heft claims cannot establish a valid entitlement to relief, as facts that are merely consistent with liability fail to nudge claims across the line from conceivable to plausible. *Id.* at 1947-1951 (quotations omitted).

Petitioner, as a *pro se* litigant, is entitled to have his pleadings construed more liberally than those drafted by attorneys. *See* Haines v. Kerner, 404 U.S. 519 (1972). Nevertheless, there are limits to which the court may legitimately go in construing such complaints. *See* Beaudett v. City of Hampton, 775 F.2d 1274, 1277-78 (4th Cir. 1985).

13

## B.  28 U.S.C. § 2255

Title 28 U.S.C. § 2255 requires a petitioner to prove by a preponderance of the evidence that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law."  28 U.S.C. § 2255(a).

"In a §2255 proceeding, the burden is on the petitioner to prove his allegations by a preponderance of the evidence, not on the government to disprove them." Abdul-Aziz v. United States, 2008 WL 4238943, *5, fn. 4 (N.D.W.Va. Sept. 12, 2008)(*citing* Sutton v. United States, 2006 WL 36859, * 2 (E.D.Va. Jan. 4, 2006)). *See also*, Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (stating that during a "proceeding under 28 U.S.C. § 2255 . . . the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . .").

## C.  Effect of Petitioner's Guilty Plea

A valid guilty plea constitutes admission of the material elements of the crime. McCarthy v. United States, 394 U.S. 459, 466 (1969). The sworn representations made by a criminal defendant at plea proceedings " carry a strong presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Furthermore, a guilty plea normally waives any claim based on non-jurisdictional errors occurring prior to the plea. Tollett v. Henderson, 411 U.S. 258, 267 (1973). In Tollett, the Supreme Court concluded that an intelligent and voluntary plea of guilty generally bars habeas review of claims relating to the deprivation of constitutional rights that occurred before the defendant pled guilty. The Supreme Court held that "[t]he focus of federal habeas inquiry is the nature of [defense counsel's] advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." *Id.* at 266-67. Thus, in a collateral attack, a petitioner

14

may only challenge the voluntary and intelligent character of a plea, such as by demonstrating that he received ineffective assistance of counsel. *Id.*

Notably, statements made by a defendant during a hearing to accept a guilty plea are subject to a strong presumption of veracity, and challenges under 28 U.S.C. § 2255 that contradict these statements may generally be dismissed. Specifically:

> [A] defendant's solemn declarations in open court . . . carry a strong presumption of verity . . . because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy . . . Indeed, because they do carry such a presumption, they present a formidable barrier in any subsequent collateral proceedings . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false . . . Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated – permitting quick disposition of baseless collateral attacks.
>
> U.S. v. Lemaster, 403 F.3d 216, 221-222 (4th Cir. 2005)(internal citations and quotations omitted)

### D. Ineffective Assistance of Counsel

In his Motion to Vacate, Petitioner asserts that he received ineffective assistance of counsel. To establish a claim of ineffective assistance, Petitioner must satisfy two well-established requirements. First, he "must show that counsel's representation fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). *See also*, Satcher v. Pruitt, 126 F.3d 561, 572 (4th Cir. 1997), *cert. denied* 522 U.S. 1010 (1997). Review of counsel's performance in this regard is highly differential. Strickland, 466 U.S. at 689. "[C]ounsel are afforded a strong presumption that their performance was within the extremely wide range of professionally competent assistance." Baker v. Corcoran, 220 F.3d 276, 293 (4th Cir.

15

2000). The Fourth Circuit further clarified that "competency is measured against what an objectively reasonable attorney would have done under the circumstances." *Id.*

Second, petitioner must also demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. *See also*, Satcher, 126 F.3d at 57. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. However, "an analysis focusing solely on mere outcome determination . . . is defective . . ." Lockhart v. Fretwell, 506 U.S. 363, 369 (1993). Instead, a proper prejudice analysis must consider "whether the result of the proceeding was fundamentally unfair or unreliable." *Id.* As a result, a court may not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." *Id.* at 369-70.

### III. Analysis

As an initial matter, the undersigned has reviewed the record, including counsel's objections to the PSR (DE-23) and argument during Petitioner's sentencing hearing (DE-37). Based on this review, the undersigned concludes that counsel's representation of Petitioner was objectively reasonable.

Regardless, in his Motion to Vacate Petitioner asserts that: 1) counsel was ineffective for failing "to present to the court the Movant[']s Medical/Mental Background" (DE 47-1, pg. 1); 2) counsel was ineffective for failing to raise certain arguments on appeal; and 3) "he was [s]entenced wrongly and in violation of 18 U.S.C. § 3553(a)" (DE 47-1, pg. 9). Each of these arguments is without merit.

### A. Counsel did not disregard Petitioner's alleged incompetency

Petitioner asserts that Mr. Walen "provided Constitutionally ineffective assistance by

16

failing to seek any type of competence hearing upon learning his client possessed a mental problem." (DE 47-1, pg. 5). In support of this claim, Petitioner contends that he "was taking an array of powerful psychotropic medications, both before and during his plea . . ." (DE 47-1, pg. 4). These allegations contradict Petitioner's sworn testimony during his Rule 11 hearing and are therefore deemed "palpably incredible and patently frivolous or false." Lemaster, 403 F.3d at 221-222. On the contrary, the issue of Petitioner's competency was fully explored during his arraignment and sentencing. Moreover, the Fourth Circuit reviewed Petitioner's plea and found it to be knowing and intelligent. (DE-40, pg. 5). Ultimately, Petitioner cannot show that "'his mental faculties were so impaired ... when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea.'" Roach v. Martin, 757 F.2d 1463, 1480 (4th Cir. 1985) (*quoting* Shaw v. Martin, 733 F.2d 304, 314 (4th Cir. 1984)). Furthermore, Petitioner has not demonstrated that either of his attorneys acted in a constitutionally unreasonable manner by disregarding evidence of Petitioner's alleged incompetency.

### B. Petitioner was effectively represented on appeal

First, the undersigned notes that Petitioner largely waived his right to file a direct appeal in the Plea Agreement. That notwithstanding, Petitioner asserts that appellate counsel failed to note " . . . the Movant-defendant's mental stability . . ." (DE 47-1, pg. 7). In addition, Petitioner contends that counsel should have requested a downward departure and argued for an "an additional one point . . . for his [acceptance of responsibility]." *Id.* Thus, although couched in terms of counsel's failure on appeal, these claims essentially reiterate Petitioner's previous arguments. Petitioner's plea was deemed knowing and intelligent by the Fourth Circuit, and, likewise, his sentence was also deemed proper. Regardless, appellate counsel has no

17

constitutional duty to raise every nonfrivolous issue on appeal and as a matter of sound strategy may choose not to dilute the most promising arguments with weaker ones. Griffen v. Aiken, 775 F.2d 1226, 1235 (4th Cir. 1985). Here in fact, Petitioner's appellate counsel raised the only nonfrivolous issue that was not foreclosed by the appeal waiver in Petitioner's plea agreement, that being the upward departure allowed by the Court at sentencing. By contrast, the additional arguments that Petitioner says should have been raised all lack merit. As noted above, defense counsel reasonably explored Petitioner's competency. Likewise, contrary to his claim, Petitioner actually received the additional point for acceptance of responsibility upon motion of the Government. (DE-37, pg. 5).

## C. Petitioner's sentence was proper

Finally, Petitioner argues that "he was [s]entenced wrongly and in violation of 18 U.S.C. § 3553(a) . . ." (DE 47-1, pg. 9). As previously noted, this issue has already been decided by the Fourth Circuit. (DE-40). A litigant "may not circumvent a proper ruling ... on direct appeal by re-raising the same challenge in a § 2255 motion." United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009).

18

## IV. Conclusion

For the aforementioned reasons, it is HEREBY RECOMMENDED that the Government's Motion to Dismiss (DE-52) be GRANTED and that Petitioner's Motion to Vacate (DE-47) be DENIED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Friday, January 06, 2012.

*[signature]*

WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE